The next matter is United States v. Blyden. May I proceed, Your Honors? Yes. Good morning, Mr. Moore. Good morning, ladies and gentlemen of this honorable panel. The trustee, Mr. Jerome Blyden, who wanted to specifically give his gratitude for your agreement to hear his case on an expedited basis. Your Honors, this case really resulted in a variety of issues that were raised in consequence of a need to make sure we addressed every question that Mr. Blyden wished to have raised on appeal. But I would like to direct the Court's attention to one of the matters that I have the highest concern about regarding the appeal, and that is the portion of the indictment that listed predicate acts that were defined as from a date unknown or from a time unknown but no later than November of 2004. It seems that that is a very, very clear call for speculation even from the grand jury. There was sufficient evidence apparently for them to designate a date of November 2004, even though they didn't provide a specific date that might be more appropriate for an on or about type of designation. But other dates were listed, were they not? Throughout the indictment, yes, Your Honor, they were listed. And the shooting was in May? The shooting was May 24th of 2004. But if Your Honor would take care in noting the predicate acts that were listed in Categories 1, 2, 3, and 4. Category 1 talked about drug conspiracies from 1999 through 2005, October 2005 when Mr. Mark was arrested and continuously incarcerated. The second couple of predicate acts, and they speak either for it to be the act. I'm concerned that two alternate acts within the same category of predicate acts should be the two predicate acts or should be counted as two predicate acts for purposes of RICO. But what's the contention that your client didn't know, didn't have notice of what was being charged? The enterprise was not in existence at the time of the shooting. My contention is it wasn't in existence. In your law, you have an in-bank decision, an old one from 1974 in Goldstein, that states an indictment as a general rule is not necessary to say the specific date or to establish a date with any absolute certainty. But when the date is critical, a critical element of the offense that's charged, and the variance between, and I use these phrases, allegata and probata, is fatal. So you allege that certain things happen on a particular date. We require those dates and those predicate acts in order to establish the existence of an enterprise, and you can't tell me with any clarity in the indictment as to when this happened beyond November of 2004. If I may continue on that line, the first category of predicate acts was 1999 to 2005 and only named Gillian Mark for the drug conspiracies. The second category of predicate acts went from November of 2004 to October of 2005 and only named Mr. Gillian Mark as the person involved in those drug conspiracies. The third area was an assault with intent to kill Mr. Friday on May 24th of 2004. That is the first act naming Mr. Blyden as a co-perpetrator of that predicate act, and Mr. Blyden was acquitted of that particular count too. The enterprise that was alleged to exist at the time of the assault was that Turnbull testified that he helped Mark move drugs through the airport from St. Thomas to North Carolina as early as 1999. Two, that Isaac testified that he had a business relationship with Mark involving dogfighting and drugs starting in March of 2003, and Friday testified that Mark arranged a supply with cocaine, and after Friday profited by selling the cocaine, Blyden sought out Friday to collect the money for Mark. These all occurred prior to the assault. Your Honor, those were all the allegations, and if you'll note that as far as the predicate acts are concerned, the jury found nothing to give credence to that. I understand the court is trying to determine whether there was – Did they have any specific findings or just – Your Honor, I thought – Somebody participating in something that deals with an enterprise that involves interstate commerce, and the enterprise existed prior to the time of the assault. Your Honor, the allegation is, as far as the predicate acts that were found to justify the existence of an enterprise by the jury, would be the allegations from a time unknown, but no later than November of 2004, and then the – twice. Did it involve Blyden, you mean? That only involved Mark. That was specific to Mark in the predicate act. What about the ones I mentioned to you from 1999 to 2003? Well, the ones you've specified to be 1999 to 2003 didn't involve Mark – I mean Blyden. Blyden's first entry comes from even Friday's testimony at some point in 2004. But he was convicted of the assault in aid of racketeering, not necessarily that he himself was involved. Doesn't that distinguish the situation? Yes, Your Honor. But in aid of racketeering required, there was an enterprise, and that the enterprise was engaged in racketeering acts, and the only racketeering acts found by the jury were subsequent to the two drug conspiracies that didn't involve Blyden that occurred after November 2004, and a dogfighting business that occurred, I believe, in 2003. Right, but that was part of it because that's part of the gambling aspect as well. But, Your Honor, you agree with me that we need two in order for the enterprise to exist at all, two predicate acts. It's like one hand clapping if you only have the dogfighting that precedes the shooting of Mr. Mark. But the dogfighting is gambling as well. Your Honor, that's the issue, that's an additional issue that we raised and maintained throughout where the issue of the dogfighting being primarily for the protection of the animals, that also gets to the failure to give the voir dire questions to assist us in exercising our peremptory challenges as to whether there's any local hostility regarding persons engaged in dogfighting. Before we get to that, you're not saying that Blyden had to be engaged in the enterprise, or that the enterprise can exist without his active involvement at that time? Your Honor, this is our problem. The indictment only speaks of one enterprise, the Mark Blyden enterprise. If there is no Mark Blyden enterprise, why is my client being charged or convicted of an association with some other enterprise that was not even specified in the body of the indictment? The Mark Blyden enterprise is the only enterprise they ever talk about. The jury instruction goes only to enterprise, but the indictment only charged the Mark Blyden enterprise. Blyden is not involved in the Mark Blyden enterprise except to the extent of dogfighting that might have occurred prior to the shooting of Mark. The remaining hand to clap to create the enterprise, which even the jury did not find to be the Mark Blyden enterprise, occurred at some point November 2004. Your Honor, this issue regarding the need for the exact dates, it should be using the on or about standard. We've got the Reel v. Shannon in which this court, 2010 in a habeas corpus action, raised the question as to what is reasonably near in time to the charge that's alleged. It found there that a month, when you say on or about December of 1999, then November, December of 1999 is a reasonable range to consider. This goes back from November of 2004. You're going backwardly to May of 2004. That's several months, almost six months. That and the position that we wanted to present to the court is not reasonable. It goes beyond the limits of due process. It's not merely a question, Your Honor, as to whether or not we're on notice because the indictment charges us a variety of things. Well, yes, it does. We're on notice of a Mark Blyden enterprise. We're not on notice of any other enterprise involving drug conspiracies that only Mark participated in and not Mr. Blyden at all. So far, you've been pretty much talking about count one. Is that correct, 1959? Yes, sir, because it's the federal element of count three, the count of conviction. Well, count three doesn't require a pattern of racketeering activity, does it? Yes, I believe it requires—you're correct. It requires an existence of an enterprise which, by definition, requires the predicate acts in order to establish the pattern of racketeering activity. But if we treat the drug trafficking and the gambling dog activity separately, why don't we have the predicate acts in this case? If you treat them separately, you do not have the two predicate acts that the jury was obliged to find in order to establish the enterprise. In the absence of the enterprise, there's no federal element for Mr. Blyden to have committed a violent act in furtherance thereto. It's almost like the house that Jack built, but at the end of it, Jack's convicted for parts that are missing and that have no sequential, logical connection. It's like a breathtaking leap in logic to get from his conviction on the theory that there was an enterprise that he was furthering his membership to or trying to gain entrance into, when that enterprise isn't even charged in the indictment. The only enterprise was the Mark Blyden indictment. I recognize that I'm out of time, Your Honors, and I've reserved some time for rebuttal. Thank you very much, Mr. Moore. Good morning. Mr. Page, yes, Mr. Page, good morning. May it please the Court. My name is Nolan Page, and I represent the United States in this matter. I submit to the Court that there's sufficient evidence on this record to sustain Mr. Blyden's conviction on count three, having committed a violent crime in an aid of racketeering activity. I'll begin with the fact that it is of no moment that Mr. Blyden was acquitted on count one. He need not have been convicted and proven to be a part of the enterprise that was charged in count one to have been convicted of the enterprise on count three. But count three does require that there was an enterprise, correct? Yes, it does. And Mr. Moore's contention is it's not the enterprise that was charged because what was charged was the Mark Blyden enterprise. And if that wasn't what was charged, then the enterprise in count three wasn't satisfied. Do you follow that? I understand the argument, but I do not agree with it. Now, as this Court said in United States v. Jones, there are five elements to 1959A3 that there is an enterprise. That enterprise need not be specific that actually involves Mr. Blyden. The enterprise has to engage in a racketeering activity which affects interstate commerce. He had to have committed a violent crime in aid of that racketeering activity. And in this case, we allege that it was for the purpose of maintaining or increasing his position within the enterprise. And the jury found the existence of an enterprise, correct? That is correct. On the verdict slip, was it noted that they found the existence of the Mark Blyden enterprise or just an enterprise? The verdict slip from which Mr. Mark was convicted, they noted that they found the existence of the Mark Blyden enterprise. All right. So presumably, Mark Blyden was the name given to the enterprise? Yes. That's just the name that was given because those were the two defendants in this particular case. And the jury found that that did, in fact, exist? The jury did find that that, in fact, existed. But I would even go so far as to say that that count one RICO need not have even been in this indictment. This could have been a one-count indictment charging the count three, the 1959A3. The jury would then have had to find the necessary elements of racketeering under that count. That's correct. But not necessarily that Mr. Blyden was part of it, but his act was in aid of it, correct? That is correct. Any additional questions that I should cover? How about the voir dire? Wasn't it highly unusual in a case such as this involving drug trafficking and dog fighting and things of this nature that the court would not really question potential jurors about their views on these matters? Well, as this court has noted in United States v. Salamone, I'm sorry if I'm butchering that, the court's primary concern is whether the juror holds a particular belief or opinion that would prevent or substantially impair the performance of his or her duties as a juror. In this case, the court, whenever there was a question raised as to whether someone knew a defendant or anyone related to the case, the court questioned that juror whether they could be fair and impartial. And time and time again, with respect to each juror who was sworn in on this case, they answered that they could. Anything else you want to tell us, Mr. Page? No, Your Honors, if that would be it. I would only end with that there's sufficient evidence presented in this case to support Mr. Blyden's conviction on count three, having committed a violent crime in aid of racketeering activity, and I ask that you reject each and every claim made by the defendant. Thank you. Very good. Thank you very much, Mr. Page. Mr. Moore. Thank you, Your Honors. Once again, there is a slight disagreement. I believe the former verdict did not mention Mark Blyden Enterprise. That was part of our objections throughout the trial and in the— What did the verdict form say? I think it just stated Enterprise, racketeering. It gave all the elements— Doesn't that tip in favor of the government? I was going to say, how does that help you? It does not state the—I'm just being—I'm just correcting the record. But how does that help you? I don't know that it helps me. I'm just correcting what I perceive or believe to be an error as an obligation as an officer of the court. So that's a factor that I think that I would like to just point out to the satisfaction, hopefully, of the court. Your Honor, I noted that the definitions of the racketeering, violent crime in aid of racketeering, and the definitions in RICO are similar and explain the same thing for definitions of Enterprise and definitions of racketeering activity. It specifically lists the particular crimes that would be used for purposes of defining racketeering activity. But our particular counterconviction has so many textual statements that were not logically capable of being followed by the jury verdict. This is not a question—I know the court has a very, very limited view. Actually, I think it's virtually none on inconsistent verdict law regarding when the jury finds this. Then, of course, you can't find that. But when the court uses a form of verdict that provides particular interrogatories and has the jury required to stay within a current of logical deductive reasoning, it establishes that there is no—my partner or my client was not a part of any criminal enterprise. And then it should tell you, if you find that, not to find the predicate acts. And then you go on to these other counts that are derivative of an enterprise. Well, but this—what he was convicted of wasn't derivative of. It was—his act was in aid of. So it's not necessarily inconsistent. Your Honor, it's inconsistent to the fact that in the absence of the existence of a enterprise that was correctly found, and that means you're—in order to find the enterprise that Mr. Mark was convicted of, you would have to find it coming into existence in November of 2004. The particular criminal act that my client was convicted of occurred in May of 2004. In other words, the enterprise that Mr. Mark was convicted of didn't exist at the time that my client was alleged to have committed a criminal act in furtherance thereto or in order to gain admittance or to enhance his position within it. It's not there. And that was the argument that we hoped to bring to the Court's attention. I recognize that the Court has some varying views on that. We also wanted to highlight to the extent possible that this dogfighting is not at all related to drug conspiracies. But there was testimony that it really had to do with gambling and gambling money and drug proceeds, et cetera, et cetera. There were witnesses that tied that in. Well, there's—actually, Your Honor, there were two. One was Mr. Turnbull who was only able to talk about that up until 2002 when he went to jail. So he wasn't involved in that business at any time relevant for statute of limitations concerns. Then there was Mr. Isaac who testified that he was involved in it, and they both talked about it like a hobby and so forth. But Mr. Isaac had a recollection of being in the dogfighting activity around 2003. But dogfighting is, as I tried to highlight, it's like any other particular offense you might do, I guess, illegally copying videotapes or movies. I mean, that's not necessarily a direct relation to the drug conspiracy, which was the driving force, if you will, of any enterprise involving Mr. Mark. It's just they were not related sufficiently within the meeting of Salinas, and it didn't exist long enough. If you take the jury finding, the jury finding that this enterprise was defined by the particular two drug acts of November of 2004, commencing in November of 2004, and a undefined dogfighting activity that we very much suggest should be a disconnect and not at all related to the court's findings regarding— But the dogfighting was even part of the May 24th altercation with respect to the contract, signing the contract and all that? Your Honor, that part of the testimony only was that Mr. Mark was—my time is up, but if I can complete my thought on that. No, surely. That Mr. Mark was in the area of the yard where his relative kept the dogs when he first met Mr. Gillian Mark. Mr. Friday had nothing whatsoever to do with dogfighting and said so on the record. He has nothing to do with the dogfighting. It was detached from the activities resulting in his shot. Thank you very much. Mr. Moore, thank you very much. The case was very well argued, and we will thank both counsel. We will take this matter under advisement.